United States District Court
Southern District of Texas
Corpus Christi Division

United States District Court
Southern District of Texas
FILED

FEB 23 2000

Michael N. Milby, Clerk

Maria Cavazos

vs.

Wal-Mart Stores, Inc.
Wal-Mart Stores East, Inc.
Wal-Mart Associates, Inc.

No. 00-34
[Judge Jack]
[Jury Requested]

# RESPONSE PROPOSED JOINT REPORT

To the Honorable Court:

Maria Cavazos ("Cavazos") respectfully files this Response Proposed Joint Report.

### Unavailability

1. Cavazos' attorney was in trial in the following case when Defendants' attorney called:

> David Yepez v. Tommy Dunlavy, No. 99-60610-3, County Court At Law No. 3, Nueces County, Texas.

### Agreement

2. Cavazos agrees with the proposed Joint Report by Defendants except as explained below.

### Question No. 2

3. A case "related" to this case does exist:

> Letty Maldonado v. Wal-Mart Stores, Inc., Wal-Mart Stores East, Inc., and Wal-Mart Associates, Inc., No. 99-556, United States District Court, Southern District of Texas, Corpus Christi Division (Judge Head).

4. The two cases have the same Defendants and defense counsel.

5. The two cases involve very similar allegations.

6. The two cases involve the same Wal-Mart Store.

7. The two Plaintiffs know each other.

8. The two cases have the same Plaintiff's counsel.

9. The same Wal-Mart employees are involved in the two cases.

10. Both cases involve the same cash register.

11. Both cases involve the same procedural irregularity (no "pulls" were made).

12. Defendants' statement that no "related" case exists is not accurate.

## Question No. 3

13. Cavazos worked at Wal-Mart in Falfurrias from 9/23/93 to 3/15/99.

14. Cavazos worked for the first 1 ½ years as a greeter and then the remainder as a cashier.

15. Defendants allege Cavazos' cash register was short on 2/17/99.

16. Cavazos was first told about this when she went to get her pay check on 2/18/99.

17. Defendants on 2/18/99 told Cavazos her cash register was short $300.

18. Cavazos counted her cash after her shift on 2/17/99 and it was not short.

19. The cash after she counted it was taken from her and placed into the cash office.

20. Cavazos had no opportunity to recount her cash after Defendants alleged a shortage.

21. Marie an Assistant Manager told Cavazos some extra money or certificates was found.

22. Later, Defendants told Cavazos that her cash register was short $341.37 not $300.

23. Defendants claimed to the Texas Workforce Commission that a videotape exists.

24. Cavazos states that this is impossible because she didn't take any money.

25. Defendants also claimed that Cavazos had been short before.

26. However, Cavazos has never been written up for being short before.

27. Defendants also claimed that no one else had access to the cash.

28. However, in truth, other people did have access to the cash.

29. For example, the people in the cash office had access to the cash.

30. Defendants also claimed Cavazos' husband went through her line at the end of her shift.

31. However, in truth, Cavazos bought a few things with a credit card in her husband's name.

32. Of course, if Defendants had a videotape, Defendants would know this.

33. Another checker checked her out through her line – all other lines were closed.

34. Cindy Garza (another checker) watched Cavazos count her money.

35. Lisa Trevino (Head Cash Service Manager) had access to the cash office.

36. Lisa Trevino according to the grapevine stole money from a previous employer.

37. Specifically, Lisa Trevino stole money from the Exxon Station owned by Mr. Gates.

38. Lisa Trevino got her job at Wal-Mart in part due to her cousin Cindy Mendoza.

39. The timing and circumstances tend to implicate Lisa Trevino in the incidents at issue.

40. Prissy Campos also had access to the cash office.

2

41. Prissy Campos is related to the regional loss prevention manager (Ruben Campos).

42. The timing and circumstances also implicate Prissy Campos in the incidents at issue.

43. Wal-mart was not truthful to the Texas Workforce Commission.

44. Wal-mart not only discharged Cavazos – it deprived her of unemployment compensation.

45. Wal-mart widely published its allegation of theft against Cavazos.

46. Nearly everybody in the store almost immediately knew about the alleged theft.

47. Many people in Falfurrias know about the alleged theft.

48. A lot of people have asked Cavazos about whether she stole money.

49. In truth, Cavazos did not steal cash or anything else.

50. Cavazos has been branded a thief by Wal-mart and now cannot find suitable employment.

51. Defense counsel said the videotape would be promptly produced if it existed.

52. Plaintiff's counsel agreed an incriminating videotape would be very significant evidence.

53. No videotape has been produced and it is believed no videotape exists.

54. The absence of an incriminating videotape establishes Wal-mart as dishonest.

### Question No. 9

55. The disclosures should not be staggered.

56. Defendants do not need to know what Plaintiff discloses to make its disclosures.

57. All parties should make disclosures by March 15, 2000.

58. Defendants should be required to produce any video-tape immediately.

### Question No. 10

59. In general, the proposed scheduling order is appropriate. Discovery should be allowed within the discovery period specified in the proposed scheduling order. A number of proposed deadlines specified by Defendants in their proposed Joint Report are too short.

### Question No. 11

60. Cavazos does not agree to the discovery schedule proposed by Defendants. A number of proposed deadlines specified by Defendants are impractical and too short.

### Question No. 12

61. Cavazos voluntarily upon request by Defense Counsel produced to Defense Counsel a copy of the Texas Workforce Commission papers relating to this case and the Maldonado case.

3

ClibPDF - www.fastio.com

62. Defense Counsel noted that an incriminating video tape would pretty much end this case. He indicated that a previous case against his client had been ended by an incriminating videotape.

63. Cavazos' Counsel asked Defense Counsel to please produce any incriminating videotape ASAP and promised to take appropriate action upon receipt. No videotape has been produced.

### Question No. 14

64. This is not a case where the identity of the manufacturer of a product has relevance.

### Question No. 15

65. The parties have focused on the videotape as the only possibility for quick resolution. Cavazos states no possibility for quick resolution exists because no incriminating videotape exists.

### Question No. 17

66. Cavazos believes mediation is often a waste of time and money. The magic of mediation has worn off. Mediation is no longer appropriate in every case – only some. Cavazos believes not enough is known about this case at this time to know whether mediation is appropriate for this case.

### Question No. 18

67. Cavazos believes Defendant's estimate is on the low side. Cavazos states that as many as 24 hours may be necessary to present the evidence in this case.

### Question No. 20

68. The following motions may be decided at the Initial Pretrial Conference:

    1. Cavazos' Motion to Require Immediate Turnover of Any Videotape.

### Question No. 22

69. As noted above, a case with significant similarities to this case exists in Judge Head's Court. It appears neither party wishes consolidation. The Court may address this on its own motion.

4

Respectfully Submitted,

*[signature: David Sibley]*

**David A. Sibley**
**Attorney At Law**
P.O. Box 9610
Corpus Christi, Texas 78469-9610
(361) 882-2377 — Telephone
(361) 692-0142 — Telecopier
State Bar No. 18337600
Federal I.D. 10053
ATTORNEY-IN-CHARGE FOR **MARIA CAVAZOS**

## CERTIFICATE OF SERVICE

On Sunday, February 20, 2000, I served this as follows:

**VIA TELECOPY NO. (361) 887-2177**
Chriss Rodriguez
Attorney For Defendants

*[signature: David Sibley]*

David A. Sibley

5

# TEXAS WORKFORCE COMMISSION
## Austin, Texas

### FINDINGS AND DECISIONS OF COMMISSION
### UPON REVIEW OF CLAIM FOR BENEFITS

**NOV 0 2 1999**
Date Mailed

C
L
A
I
M
A
N
T

MARIA T CAVAZOS
607 E TERRY ST
FALFURRIAS TX 78355

Motion For Rehearing Number:
99-009578-10-100599

Commission Appeal Number:
99-007871-10-081899

Social Security Number:
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

E
M
P
L
O
Y
E
R

WAL-MART
RR 2 BOX 200
HIGHWAY 281 SOUTH
FAFURRIAS TX 78355

Commission Decision Dated:
09-23-99

Appeal Filed by: **CLAIMANT**

---

On September 23, 1999, the Commission issued a decision in Commission Appeal Number 99-007871-10-081899. The claimant has now filed a timely motion for rehearing in accordance with the provisions of Section 212.153 of the Texas Unemployment Compensation Act.

The Commission has considered the motion for rehearing and is of the opinion that its decision rendered on September 23, 1999, was proper. Accordingly, a rehearing is denied.

_Diane D. Rath_
Diane D. Rath
Chair

_Ron Lehman_
Ron Lehman
Commissioner Representing Employers

_T.P. O'Mahoney_
T.P. O'Mahoney
Commissioner Representing Labor

Form MRLTR

| | |
|---|---|
| **TEXAS WORKFORCE COMMISSION** Appeal Tribunal Decision | Appeal No.: 99-126070-1-0799<br>Page No.: 2 |

**CASE HISTORY:** By a determination dated April 21, 1999, the claimant was disqualified under Section 207.044 of the Texas Unemployment Compensation Act beginning March 21, 1999, and continuing until the claimant returns to employment and either works for six weeks or earns wages at least equal to six times the claimant's weekly benefit amount because the claimant was discharged from the last work because of misconduct connected with the work. The claimant appealed.

It was also ruled that there would be no chargeback to the employer's account as a result of this claim.

**FINDINGS OF FACT:** Prior to filing an initial claim for unemployment benefits with the effective date of March 21, 1999, the claimant last worked from September 23, 1993, through March 15, 1999, as a cashier for the named employer, a discount retail store.

On February 17, 1999, it was discovered that the claimant's register had a cash shortage of $341.37. This was from when the claimant worked the night before on February 16, 1999, from 4:00 p.m. to closing. No one else had access to the claimant's register except at the last transaction of the evening when the other cashier on duty that night conducted a transaction in which the claimant's husband bought some items. The other cashier logged onto the claimant's cash register using her own user ID and password and handled the transaction for the claimant's husband while the claimant stood by. The other cashier then logged off and the claimant closed out the register. The claimant had shortages in the past, but these were not considered significant by the employer. When the claimant counted out her money, she placed the money into a bag and placed it in a lock box. The member of management who closed that evening took the lock box and put in the safe. This transaction was videotaped and viewed once an investigation was conducted regarding the loss. A thorough investigation was conducted by the store manager and loss prevention. It was determined that this indeed was a cash shortage and not a keying or voiding error which could have resulted from receiving a check or credit card. The claimant had no explanation why the money was missing, and loss prevention nor the manager were never able to determine exactly how the loss occurred. After the investigation was completed, the claimant was told that she was discharged on March 13, 1999. Company policy states that over a $100.00 worth of cash shortages will not be tolerated. Prior to the claimant beginning her shift on February 16, 1999, the claimant's register was balanced and there were no problems with the register amounts at that time.

**CONCLUSIONS:** Section 207.044 of the Act provides that an individual who was discharged for misconduct connected with the individual's last work is disqualified for benefits until the individual has returned to employment and worked for six weeks or earned wages equal to six times the individual's benefit amount.

Section 201.012 of the Act defines "misconduct" to mean mismanagement of a position of employment by action or inaction, neglect that jeopardizes the life or property of another, intentional wrongdoing or malfeasance, intentional violation of a law, or violation of a policy or rule adopted to ensure the orderly work and the safety of employees, but does not include an act in response to an unconscionable act of an employer or superior.

The following decision has been adopted as a precedent by the Commission in Section **MC 300.40** of the Appeals Policy and Precedent Manual.

<u>Appeal No. 1115-CA-77</u>. The claimant, a coffee shop cashier, was discharged because, over a three-day period, she had cash discrepancies of $95 to $140 per day whereas the average discrepancy of the other cashiers was $4 per day. Also, the claimant's register tapes were torn and, during the claimant's two-week vacation, her cash register was operated without discrepancies and with substantial increase in the daily gross revenues of the shop without any increase in patrons or any change in menus or prices. <u>HELD</u>: The claimant was guilty of either carelessness or negligence in the performance of her work. Considering the degree of loss involved, this carelessness was of sufficient magnitude to constitute misconduct connected with the work. Disqualification under Section 207.044.

The claimant was discharged for a shortage from her register of $341.37. Although the claimant testified she did not know how this cash shortage happened and the employer never determined what happened to the money after a thorough investigation, the claimant's loss of $341.37 from her register reveals negligence enough to constitute misconduct connected with the work. As the above precedent indicates, carelessness or negligence can constitute misconduct connected with the work if a cash discrepancy is significant. Therefore, the claimant was discharged from her last work for misconduct in connection with the work. The determination dated April 21, 1999, disqualifying the claimant from benefits under Section 207.044 of the Act, will be affirmed.

Section 204.022 of the Act, in part, provides that benefits paid to a claimant shall not be charged to an employer's account as chargebacks if the claimant's last separation from employer's employment prior to the beginning date of the claimant's benefit year was under disqualifying circumstances under subsection 207.044, 207.045, or 207.053.

As the claimant is disqualified under Section 207.044 of the Act, the employer's account will not be subject to charge.

**DECISION:** The determination dated April 21, 1999, disqualifying the claimant under Section 207.044 of the Act beginning March 21, 1999, and continuing until the claimant has returned to employment and either worked six weeks or earned wages at least equal to six times the claimant's weekly benefit amount, is affirmed.

The chargeback determination is affirmed. There will be no chargeback to the employer's account as a result of this claim.

Sally K. Collins
Hearing Officer

sdr